Merrimack, ⎱
June, 1896. ⎰

### CARPENTER *v.* FISHER *& a.*

The question of the amount of damages caused to a prevailing defendant by a preliminary injunction against him is determined by the court.

DEBT, on an injunction bond. The defendants move that the action be dismissed for want of jurisdiction. Facts agreed. The bond was given under the 36th rule in chancery, in a suit in equity brought by Fisher against Carpenter in the supreme court for Grafton county. It was executed by Fisher as principal, and by the other defendants, Hill and Chandler, as his sureties. The sureties are citizens of this state, the writ was served upon them, and they appear by counsel. Fisher is a citizen of Massachusetts. Since 1876 he has been and now is the consul of the republic of Chili in Boston, and has been officially recognized as such by the president of the United States. At the date of the writ he had attachable real and personal property in this state; but the writ was not served upon him, and no attachment of his property was made. He appears specially for the purpose of moving, or joining with the other defendants in moving, that the action be dismissed for want of jurisdiction.

*E. A. & C. B. Hibbard*, for the plaintiff. The law of nations does not protect a consul from suit. 1 Kent 44. By the constitution of the United States, *art.* 3, *s.* 2, the judicial power of the courts of the United States extends to all cases affecting consuls, and in such cases the supreme court has original jurisdiction. But the jurisdiction, whether of the supreme court or of the

other courts of the United States, is not by the constitution made exclusive of the jurisdiction of the state courts.

By *s.* 687, U. S. R. S., the supreme court of the United States has "original, but not exclusive, jurisdiction of all suits . . . in which a consul or vice-consul is a party." By *s.* 563, ¶ 17, U. S. R. S., the district courts of the United States have jurisdiction of all suits against consuls, with an exception not material here. By *s.* 711, ¶ 8, U. S. R. S., the jurisdiction of the courts of the United States was exclusive of the state courts in cases against consuls, and all the cases on which the defendants relied at the trial term, so far as they appear to support the defendants' contention, were decided upon the authority of this paragraph; but this paragraph was repealed by an act approved February 18, 1875, entitled "An act to correct errors and to supply omissions in the Revised Statutes of the United States," and state courts are not now excluded from jurisdiction of cases against consuls, the whole question of their jurisdiction in cases against ambassadors or other public ministers and consuls being now left to be determined according to the law of nations.

But state courts have never been excluded from jurisdiction of cases that merely "affect" consuls. If Fisher had not been named in the writ as a codefendant, it could not have been pretended that the case was against him, and the fact that it might "affect" him by leading to a suit for contribution would not have brought it within any of the statutes, even if it might under the constitution have given a concurrent jurisdiction to the supreme court of the United States. Nor would the case be one against Fisher because he was named in the writ as a codefendant and appeared specially for the purpose of moving to dismiss without having been served on. Only service on him or a general appearance by him could make him a party. The motion could not have been granted, even under the law as in force before the repealing statute of February 18, 1875,

*Burleigh & Adams*, for the defendants. Have the federal courts jurisdiction exclusive of the state courts of all suits against consuls? It has been so held by federal and state courts from the foundation of the government to the present time. We take the position that, independent of any legislation by congress, the grant of judicial power to the federal government by the constitution of the United States in all cases affecting "ambassadors, other public ministers and consuls," was an absolute grant, excluding, by necessary implication, from the very nature of the subjects respecting which this judicial grant was to apply, the subsequent jurisdiction of the state courts. "The judicial power of the United States shall be vested in one supreme court and such inferior courts as congress may from time to time or-

dain and establish. . . . The judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, and treaties made, or which shall be made under this authority; to all cases affecting ambassadors, other public ministers and consuls. . . . In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction. In all other cases before mentioned, the supreme court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as the congress shall make." Const. U. S., *art.* 3, *ss.* 1, 2.

Under the foregoing constitutional grant of judicial power from the states, congress passed the famous judiciary act of September 24, 1789, distributing the judicial power of the Union among inferior federal courts which it established, and whose jurisdictions it carefully defined. Section 9 of this act provided " that the district court . . . shall also have jurisdiction exclusively of the courts of the several states, of all suits against consuls or vice-consuls," etc. The phrase " exclusively of the courts of the several states " used in this section is surplusage, and was inserted out of an abundance of caution, at a time when state rights were not as well defined as later on, and the powers and limitations of the federal constitution had not been judicially determined. It was, at most, the affirmation by congress of a principle deeply imbedded in the constitution itself.

In the Revised Statutes of the United States, *s.* 711, is to be found this same spirit of caution, particularly in the eighth paragraph, where the jurisdiction of the federal courts is made exclusive of state courts " of all suits and proceedings against ambassadors or other ministers, . . . or against consuls or vice-consuls." This paragraph was entirely superfluous, and its repeal by the act of February 18, 1875, had no legal effect on the status of officials named therein. To hold otherwise would prove too much, for ambassadors and other public ministers are included in this paragraph equally with consuls, and it is well settled international as well as constitutional law that they are not amenable to the common-law courts of the land.

Under the constitution, the federal judicial power is extended equally to ambassadors and consuls. Whether under international law or the law of other countries consuls enjoy an exceptional status before the courts of common law or not, they are under our political system raised to that plane by the constitution; and if the repeal of this paragraph sweeps away the immunities of consuls, it is equally effective as to ambassadors. But it does nothing of the kind. Ambassadors and consuls, their rights, duties, and relations to governments, are incident to sovereignty and appertain to international matters. Until the

adoption of the constitution there was no political sovereignty here, and, therefore, no agents or incidents of sovereignty. The several states had no international status, and neither sent representatives of sovereignty to other nations, nor received them at home. The establishment of our national government created the necessity for tribunals, agents, and agencies for the exercise of national and international functions. A new set of public agents and a new sphere of political activities were born of the national constitution, and are peculiar to the federal government. The treaty-making power, foreign relations, admiralty and maritime jurisdiction, and matters relating to foreign ministers and consuls are of this class, and have never been subject to state control. In some of these cases the supreme court of the United States has held that although the jurisdiction of the state courts is not excluded in express terms, yet from the nature of the subjects to be acted upon and the express grant of power given to the general government relative to the principal subjects, concurrent state jurisdiction is just as effectively excluded by necessary implication as though positive words of exclusion had been used.

The judiciary act of 1789 was passed directly after the adoption of the constitution, excluding in express terms the jurisdiction of state courts in cases brought against consuls. It was never contended that congress did not have the power under the constitution to do this, whether such legislation was necessary or not. Therefore, after congress had excluded in express terms the jurisdiction of state courts, it became entirely unnecessary, when the question of consular immunity came before the courts for determination, to examine the provisions of the constitution profoundly to determine whether they were broad enough, in and of themselves, to exclude state jurisdiction. Jurists naturally directed their attention in such cases, first to the judiciary act, and later to the Revised Statutes, and there found ready and ample authority to sustain federal jurisdiction. It was necessary to examine the constitution only far enough to satisfy the court that congress had not exceeded its constitutional powers. Hence we find in almost every judicial opinion where federal jurisdiction is upheld to the exclusion of state courts in suits against consuls, that the court refer for authority to " the constitution and laws of the United States." Although the reasoning of the court in some cases discloses a conception and grasp of the constitution that would seem to make that instrument the sole and sufficient basis of consular immunity from state jurisdiction, yet it is in the treatises of eminent authors and jurists on constitutional and international law that we find the subject most profoundly and satisfactorily discussed.

Notwithstanding the repeal of the eighth paragraph of section 711 of the Revised Statutes in 1875, not a case can be found

since that time where a state court has entertained jurisdiction of a civil suit against a foreign consul, or a federal court has held that the repeal gave state courts concurrent jurisdiction. In *Froment* v. *Duclos*, 30 Fed. Rep. 385, which was an action against a foreign consul and others in a joint undertaking, it was held that the act of 1875 did not diminish the jurisdiction of the federal courts over this class of cases. The court say : "Whatever may be the effect of the repeal of the exclusive jurisdiction of the federal courts as respects consuls by the act last mentioned [the act of February 18, 1875], that act cannot be construed as intended to diminish the jurisdiction of the United States district courts in actions affecting consuls, as it existed before. . . . It would seem clear that the jurisdiction of this court in such a case as this should be maintained, whether a similar suit be now maintainable in the state courts or not." In *Börs* v. *Preston*, 111 U. S. 252 (decided by the supreme court of the United States in 1883), *Harlan*, J., says (*p.* 261) : " By the existing law, there is no statutory provision which, in terms, makes the jurisdiction of the courts of the United States exclusive of the state courts in suits against consuls or vice-consuls. . . . This court and the district courts are the only courts of the Union which, under the constitution or the existing statutes, are invested with jurisdiction, without reference to the citizenship of the parties, of suits against consuls, or in which consuls are parties." These decisions indicate, not only that the court was not called upon to determine the constitutional question whether or not state courts have had jurisdiction of cases against foreign consuls since the enactment of February 18, 1875, but that it did not intend to indicate a judicial opinion on that very important question. The following are some of the leading authorities which uphold the exclusive jurisdiction of the federal courts in all cases against foreign consuls and those jointly liable with them. *Davis* v. *Packard*, 7 Pet. 276 ; *United States* v. *Ortega*, 11 Wheat. 467 ; *Valerino* v. *Thompson*, 3 Sheld. (N. Y.) 576 ; *Mannhardt* v. *Soderstrom*, 1 Binn. 138 ; *Commonwealth* v. *Kosloff*, 5 S. & R. 545 ; *Hall* v. *Young*, 3 Pick. 80 ; *Sartori* v. *Hamilton*, 1 Green (N. J.) 107 ; *Griffin* v. *Dominguez*, 2 Duer 656 ; *Marbury* v. *Madison*, 1 Cranch 137 ; *Golden* v. *Prince*, 3 Wash. 313 ; *Sturges* v. *Crowninshield*, 4 Wheat. 122 ; *Cohens* v. *Virginia*, 6 Wheat. 264 ; *Ames* v. *Kansas*, 111 U. S. 449.

"Considering the importance of the consular functions and the activity which is required of them in all great maritime ports, and the approach which consuls make to the efficacy and dignity of diplomatic characters, it was a wise provision of the constitution of the United States which gave to the supreme court original jurisdiction of all cases affecting consuls as well as ambassadors and other public ministers ; and the federal jurisdiction

is understood to be exclusive of the state courts." 1 Kent (12th ed.) *56, note. "It has been decided that these privileges comprehend foreign consuls, who are also citizens; and also that when a foreign consul is sued jointly with others, it brings his codefendants within the jurisdiction of the federal courts by unavoidable implication." Hall. Int. Law 250. The second edition of Wheaton's Digest of International Law devotes seventy-five pages to consuls, their powers, duties, privileges, and immunities. In this profound treatise, published twelve years after the act of February 18, 1875, and twice recognized as standard authority by congress, there is not the slightest intimation that state courts acquired jurisdiction over suits against foreign consuls by reason of that act; but, on the other hand, the federal jurisdiction over such cases is upheld in all its pristine vigor. As late as 1889, Judge *Cooley*, in a course of lectures on the constitutional history of the United States, delivered at the University of Michigan, which have since been published in book form, maintained the same constitutional doctrine; and in a course of lectures on the constitution, delivered in 1889–90 at the National University at Washington, Mr. Justice *Miller* of the supreme court asserted in unequivocal terms the exclusive jurisdiction of the federal courts over suits against foreign consuls under the constitution. Is it credible that these profound jurists and authors either gave a superficial and unsound interpretation of the federal constitution, or had for more than a decade overlooked the act of February 18, 1875, repealing the paragraph in the Revised Statutes which in express terms excluded the jurisdiction of state courts?

In this connection we call attention to the considerations of a sound and enlightened public policy, both national and international, and to the reasoning with which the judicial opinions and legal treatises which we have quoted abound, in support of the proposition that the highest national courts of the nation should have exclusive jurisdiction of all suits against the public functionaries of foreign governments, as bearing on the question whether or not the grant of judicial power in the constitution to the federal government, in respect of suits against foreign consuls, was intended to be exclusive of the jurisdiction of the several states. The same course of reasoning and the same national policy which made an act of congress excluding the jurisdiction of state courts indispensable to the peace and security of the country, in the minds of statesmen who were in doubt as to the efficacy of constitutional exclusion without it, might to the minds of other statesmen furnish convincing proof that such exclusion was intended to be imbedded in the constitution itself without any supplementary action by congress.

The importance which the supreme court of the United States, at an early date, attached to federal control over cases affecting

consuls is evidenced by the declaration of *Marshall*, C. J., in *Cohens* v. *Virginia*, 6 Wheat. 264, as follows (*p*. 396): "The jurisdiction of the court is declared to be original 'in cases affecting ambassadors, other public ministers, and consuls.' There is, perhaps, no part of the article under consideration so much required by national policy as this," etc. The opinion of Hamilton is expressed in No. 81 of the Federalist, in the following language: "Public ministers of every class are the immediate representatives of their sovereigns. All questions in which they are concerned are so directly connected with the public peace that, as well for the preservation of this, as out of respect to the sovereignties they represent, it is both expedient and proper that such questions should be submitted in the first instance to the highest judicatory of the nation." Though consuls have not, in strictness, a diplomatic character, yet, as they are the public agents of nations to which they belong, the same observation is in a great measure applicable to them.

In contending for a construction of the federal constitution which excludes the jurisdiction of state courts over suits like the one at bar, we are not unmindful of the elementary principle of interpretation which has been applied to that instrument by the highest courts of the land, both state and federal, and which has found no more forcible expression anywhere than in *Pierce* v. *State*, 13 N. H. 536, in which it is said (*pp*. 572, 573): "All the rights and powers which the states possessed before the adoption of that constitution they still retain and may exercise, unless they are taken away, limited, or modified by it. . . . The inquiry then might be narrowed down to the question whether this exercise of power by a state is so repugnant to the powers granted in the constitution to the general government, that the state cannot pass laws of that description, there being no action of the government upon the same subject-matter in conflict with them." In *Beavins' Petition*, 33 N. H. 89, it is said (*p*. 92): "Only in those cases where, previous to the constitution, state tribunals possessed jurisdiction independent of national authority, can they now constitutionally exercise a concurrent jurisdiction." This border-land of constitutional jurisdiction between federal and state courts is also discussed in *State* v. *Pike*, 15 N. H. 83; *George* v. *Concord*, 45 N. H. 434; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Martin* v. *Hunter*, 1 Wheat. 304; *United States* v. *Lathrop*, 17 Johns. 3. In *Miller* v. *Van Loben Sels*, 66 Cal. 341, decided since the act of February 18, 1875, the defendant, consul of Paraguay, did not plead his privilege at the trial term, but appealed from the judgment against him. A motion that the judgment be reversed and the suit dismissed was granted. The court say: "A state court has no jurisdiction of an action at law brought against a consul of a foreign government. The exemption of a foreign consul

from any action against him in a state court is not a personal privilege. It is matter of jurisdiction, and is not waived by the failure of the defendant to plead it. Such exemption may be taken advantage of in the supreme court for the first time."

*Charles B. Hibbard*, for the plaintiff, orally, in reply, cited and commented upon *United States* v. *Ravara*, 2 Dall. 297; *Marbury* v. *Madison*, 1 Cranch 137; *Mannhardt* v. *Soderstrom*, 1 Binn. 138; *Commonwealth* v. *Kosloff*, 5 S. & R. 545; *Cohens* v. *Virginia*, 6 Wheat. 264; *Osborn* v. *Bank*, 9 Wheat. 738; *United States* v. *Ortega*, 11 Wheat. 467; *Davis* v. *Packard*, 7 Pet. 276; *Gittings* v. *Crawford*, Taney's Dec. 1; *St. Luke's Hospital* v. *Barclay*, 3 Blatchf. 259; *Graham* v. *Stucken*, 4 Blatchf. 50; *Sagory* v. *Wissman*, 2 Ben. 240; *Bixby* v. *Janssen*, 6 Blatchf. 315; *Börs* v. *Preston*, 111 U. S. 252; *Froment* v. *Duclos*, 30 Fed. Rep. 385; *Miller* v. *Van Loben Sels*, 66 Cal. 341; *Rock River Bank* v. *Hoffman*, 22 How. Pr. 250; *Naylor* v. *Hoffman*, 22 How. Pr. 510; *Tilton* v. *Parker*, 4 N. H. 142.

CARPENTER, C. J. As a general rule, equity having acquired jurisdiction of a cause disposes of all questions the decision of which is necessary to its final determination. *Eastman* v. *Bank*, 58 N. H. 421; *Moody* v. *Lucier*, 62 N. H. 584, 587, 588. The question of the amount of damages caused to a prevailing defendant by a preliminary injunction is incidental to the principal issues. It is to be determined upon equitable principles, in view of all the circumstances of the case. In an investigation of the merits, all or nearly all the evidence affecting the damages is heard and considered. Neither party has a right to a trial of the question by the jury. Such a trial might, and in many cases would, involve a retrial of the entire cause. The parties should not be subjected to this needless expense. Although in a few instances the question of the amount of the damages has been submitted to the jury or otherwise determined in an action at law on the bond, it has been for the reason that neither party objected, and the attention of the court was not called to the subject. *Derry Bank* v. *Heath*, 45 N. H. 524; *Towle* v. *Towle*, 46 N. H. 431; *Solomon* v. *Chesley*, 59 N. H. 24; *Jackman* v. *Eastman*, 62 N. H. 273; *Gage* v. *Porter*, 64 N. H. 619. Generally, the court that hears the principal cause has, if requested, determined the question. It is the proper practice. In an action at law on the bond, the parties are entitled to trial by jury if the damages claimed exceed $100. Trials by jury are expensive to the public. One object of the amendment of the constitution, adopted in 1877, depriving parties in civil actions of the right of trial by jury " in cases in which the value in controversy does not exceed $100 and the title to real estate is not concerned " (Bill of Rights,

*art.* 20), was to save the public expense of such trials in that class of cases. Since that time jury trials in those cases have not been allowed, though desired and moved for by both parties, except for special and extraordinary reasons. It does not appear that there is any reason for sending the question of damages in the present case to a jury. Upon the motion of either party, the court that heard the cause would have determined what, if anything, Fisher should pay to Carpenter to indemnify him for the injury caused to him by the injunction. If an action on the bond should be necessary to obtain satisfaction of the amount adjudged due, no question, in the absence of fraud, would be open to the defendants except that of its execution. Upon the motion of either party, the original action may be brought forward, the question of Carpenter's damages be determined by the court, and execution for the sum found his due be issued against Fisher.

It does not follow that the present action was improvidently brought. It may be necessary to secure the payment of the judgment that may be rendered against Fisher. It will stand continued until the amount Fisher ought to pay is determined and an execution for that sum is returned unsatisfied, or until it is otherwise made apparent that the plaintiff must rely for indemnity upon the obligation of the sureties.

. If any judgment that may be obtained against Fisher is satisfied, the question of the jurisdiction of the court in this action will not arise. Until it does arise, it need not be considered. To this suit Fisher is not a party. Whether, being interested in the result and perhaps concluded, as between him and the defendants, by a judgment against them, he has a legal right to appear and raise the question of jurisdiction or join with the defendants in raising it, or whether he may be lawfully refused permission to appear for that purpose (*Reynolds* v. *Damrell*, 19 N. H. 394; *Kimball* v. *Wellington*, 20 N. H. 439; *Levy* v. *Woodcock*, 63 N. H. 413; *Martin* v. *Wiggin*, 67 N. H. 196), may or may not prove to be material questions. However that may be, the plaintiff has leave to strike his name out of the writ.

*Case discharged.*

All concurred.